Glenn R. SCHULTZ, Plaintiff-Appellee,

v.

Daniel THOMAS and Carl Pavilonis, Defendants-Appellants.

No. 86–3162.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1987.

Decided Oct. 27, 1987.

Rehearing and Rehearing En Banc Denied Dec. 9, 1987.

Daniel P. Wright, Racine, Wis., for defendants-appellants.

Stephen M. Lucareli, Racine, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

BAUER, Chief Judge.

During the early morning hours of November 14, 1981, in the City of Racine, Wisconsin, the defendant, Racine City Police Officer Daniel Thomas, observed a traffic violation committed by the plaintiff, Glenn Schultz. Officer Thomas pursued Schultz in his squad car, apprehending the plaintiff's vehicle following a short chase. A caustic exchange ensued between Thomas and Schultz later involving defendant Pavilonis, also a member of the Racine City Police Department. Schultz was subsequently arrested and charged with disorderly conduct in violation of Municipal Ordinance 25.01.010. Schultz alleged that during the course of his arrest the officers struck his head against the hood of their squad car and threatened to "bash [his] teeth in."

On March 24, 1982, the disorderly conduct charge was tried in Racine County Circuit Court before Judge Dennis J. Flynn, who sat as the trier of fact. The trial began at 9:55 a.m. and ended the same day at 1:50 p.m. Following the testimony of Glenn Schultz, Officer Thomas, Officer Pavilonis, Lisa and Brian Schultz, Scott Nelson, and Paul Carbajal, Judge Flynn rendered an oral decision from the bench acquitting Schultz of the disorderly conduct charge.[1]

Judge Flynn made seven specific findings that the testimony of Officers Thomas and Pavilonis was unbelievable or that their statements were lies regarding threats, harassment, and the deprecation of Schultz during the course of his arrest. Judge Flynn's decision also contained his opinion that Thomas and Pavilonis had abused their authority and suggested that the matter be referred to the City Police and Fire Commission.

Following his acquittal, Schultz filed a two-count civil rights action pursuant to 42 U.S.C. § 1983 against the two defendants, the City of Racine, and other unknown officers for false arrest and excessive use of force.[2] Prior to trial in the United States District Court before Judge Myron Gordon, the defendants filed a motion *in limine* seeking to exclude any reference to Judge Flynn's March 24, 1982 decision. Judge Gordon denied the defendants' motion and allowed Judge Flynn to testify to the findings of fact and conclusions of law contained in his opinion. A transcript of Judge Flynn's decision was also admitted into evidence and later sent to the jury room. The defendants renewed their motion to exclude Judge Flynn's testimony just prior to trial and objected to the admission of his decision as well as its submission to the jury for deliberations.

A six-person jury returned a verdict for the plaintiff on both counts, awarding compensatory damages against each defendant for $250.00 and punitive damages against each in the amount of $80,000. The defendants moved for a new trial and reduc-

---

1. Although many of the facts presented were similar, the reason plaintiff was acquitted under the disorderly conduct charge is irrelevant to his § 1983 false arrest and excessive force claim.

2. Pursuant to the defendants' motion for summary judgment, the City of Racine was dismissed from the case.

tion of the punitive damage award. The court denied the defendants' motion but reduced the punitive damage award by one-half.

Thomas and Pavilonis appeal the district court's denial of their motion for a new trial and charge that the court's admission of Judge Flynn's testimony constitutes reversible error, 649 F.Supp. 620. We believe that admission of Judge Flynn's testimony regarding the witnesses' credibility constitutes an abuse of discretion and therefore remand this case for a new trial in accordance with this opinion.

While we are mindful of the deference our system of appellate review requires when considering a trial judge's determinations on the admissibility of evidence, we are firmly convinced that Judge Gordon abused his discretion in admitting Judge Flynn's opinion as to the credibility of the witnesses. *See United States v. Gentile*, 816 F.2d 1157, 1161 (7th Cir.1987) ("Ordinarily we will reverse a district judge's decision to exclude evidence only if the judge has abused his discretion in so doing."); *Webb v. City of Chester*, 813 F.2d 824, 827 (7th Cir.1987); *United States v. Buishas*, 791 F.2d 1310, 1313 (7th Cir.1986). During the course of trial, Judge Gordon permitted Judge Flynn to testify as to his findings in the disorderly conduct case and also admitted into evidence the text of Judge Flynn's transcribed oral decision. Contained in that opinion were the following statements:

> I find the officers' testimony not to be credible. Said another way, I find it to be a lie.
>
> I find that under the facts here, that Officer Thomas did in fact threaten and swear at, using the word ass-hole, the defendant, and I find under the circumstances that was not called for.
>
> I find it was the officer who was telling an untruth and the four citizens who were telling the truth.

> \* \* \* \* \* \*

> I find that Officer Pavilonis, under the testimony of this case, is not credible in his testimony today. I find that he did

make threats against the defendant, and that he used inappropriate language....
> Basically, I find that the citizens of the community are more credible in this case in their testimony than are the two police officers who I find to be lying relative to what occurred here. I think the police in this case are not credible.
> The police officers acted to confront, to depreciate, ridicule and harass not just once but repeatedly, and that their actions, as I view their actions, constitute a clear misuse of the authority that the community gives to their police officers. The officers never gave straight directives, nor did they give answers to legitimate questions.
> The officers grabbed the defendant by the hair and hit his head on the car, and he ended up with a bump....
> I find the officers' testimony to be incredible ... and I want this to be referred to the Police and Fire Commission, and I find the officers to be telling untruths, and I find the defendant and his witnesses to be credible in this particular case.

Obviously, the occurrence upon which Judge Flynn decided the disorderly conduct charge was the same as that placed before the civil rights jury. In determining whether the defendants violated Schultz's civil rights by falsely arresting him and then giving willfully false testimony in order to secure his conviction, the jury was required to observe and listen to many of the same witnesses giving the identical testimony as that which formed the basis for Judge Flynn's disorderly conduct decision. Indeed, the aforequoted excerpts from Judge Flynn's opinion so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them. *See Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir.1986) (upholding a district court's refusal to admit the text of an arbitration decision because it would "either usurp the jury's role in assessing credibility or would be unfairly preju-

dicial"); *cf. Town of Bolivar, Tennessee v. Kelly*, 69 F.2d 58, 59 (6th Cir.1934) (trial judge's comment to the jury regarding credibility of witnesses is impermissible).

■ Moreover, Judge Flynn's findings and opinion regarding Schultz's arrest and subsequent prosecution are irrelevant to an adjudication of his civil rights claim. Judge Flynn was not a witness to the events in question and therefore could not properly comment on what transpired on November 14, 1984. *See* FED.R.EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter...."). Yet the district court admitted Judge Flynn's assessment that "the officers grabbed the defendant [Schultz] by the hair and hit his head on the car ... and that the officers acted to confront, to depreciate, ridicule and harass ... [Schultz]."

■ The appellee maintains that Judge Flynn was, in fact, a witness to the defendants' false testimony given during the disorderly conduct trial and therefore could properly testify upon such matters. Again, however, Judge Flynn was not testifying about the existence of some objective fact as to which he had personal knowledge; but rather, gave his opinion based upon his own assessment of the witnesses' credibility. Such opinion testimony, unless rendered by an expert upon matters of "scientific, technical, or other specialized knowledge," *see* FED.R.EVID. 702 & 703, is inadmissible. *See* FED.R.EVID. 602.

Under FED.R.EVID. 608, "the credibility of a witness may be attacked ... by evidence in the form of opinion or reputation ... for truthfulness or untruthfulness...." But Judge Flynn merely tried the plaintiff's disorderly conduct case. He was not a witness to nor did he have any personal knowledge of the underlying facts. Thus he had no basis for his opinion about the defendants' truthfulness other than his own credibility observations during the previous trial. No person, especially a judge, should usurp the jury's exclusive duty to determine credibility. "Unless that basis or source demonstrates that the opinion is rationally based on the perception of the witness and would be helpful to the jury in determining the fact of credibility, it should not become part of the proof in the case." *United States v. Dotson*, 799 F.2d 189, 193 (5th Cir.1986). *See* FED.R.EVID. 701. Accordingly, admitting Judge Flynn's assessment of the witnesses' credibility was reversible error, and we need not reach whether admitting Judge Flynn's testimony here was in any event unfairly prejudicial within the meaning of FED.R.EVID. 403. *See Code of Judicial Conduct for United States Judges* Canon 2 (1986).

Because Judge Flynn's testimony was irrelevant and tended to usurp the jury's function in assessing the credibility of testifying witnesses we remand this case for a new trial.