**Lloyd B. FISHER, Plaintiff–Appellant,**

v.

**Judge James J. KRAJEWSKI, Defendant–Appellee.**

No. 88–1827.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1988.

Decided May 2, 1989.

Rehearing and Rehearing In Banc Denied June 13, 1989.

---

MacArthur Drake, Gary, Ind., for plaintiff-appellant.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

On January 1, 1986, Judge James J. Krajewski discharged the appellant Lloyd Fisher from his position as an assistant public defender in Lake County, Indiana, prompting Fisher to file a lawsuit under the United States Constitution and 42 U.S.C. § 1983. Fisher appeals the jury verdict and the denial of his motion for a new trial. We affirm.

In June 1985 the defendant/appellee Krajewski, a Republican, was appointed to fill a vacancy in the Lake County (Indiana) Court, Division III, after the resignation of Judge Orval W. Anderson, a Democrat. On or about December 12, 1985, Judge Krajewski informed Lake County assistant public defenders Steve Kurowski, Dave Nicholls and Lloyd Fisher, all of whom were Democratic appointees of Anderson, that they would be terminated effective January 1, 1986.

Subsequent to their termination Kurowski and Nicholls filed suit against Judge Krajewski in the United States District Court for the Northern District of Indiana, contending their discharge was politically motivated in violation of their first amendment right to freedom of speech. Lloyd Fisher, the plaintiff/appellant in this action, did not join in that suit.[1]

The parties in *Krajewski I* consented to a final disposition before a magistrate pursuant to 28 U.S.C. § 636(c). Magistrate Andrew P. Rodovich presided over the trial dealing with the question of whether Judge Krajewski terminated Kurowski and Nicholls because of their politics, and ruled in their favor.[2] In October 1987 Judge Krajewski reinstated Nicholls and Kurowski,

as well as Lloyd Fisher, to their former positions as assistant Lake County, Indiana public defenders and directed them to report to work on October 19, 1987, at 8:30 a.m.

On that day, Judge Krajewski issued a "Memorandum" containing a "description of the job of public defender, Lake County Court, Division III" and various employment rules (relating, for example, to office hours, length of coffee breaks and work assignments), copies of which were provided to Fisher, Kurowski and Nicholls. The same day, Judge Krajewski issued a "rider" to the above memorandum informing Fisher, Kurowski and Nicholls "that pursuant to the employment rules as listed that your first notice of being late has been filed because of your late arrival on October 19, 1987." Judge Krajewski issued a second memorandum the same day, notifying the three public defenders of "a second violation of the employee rules of the Lake County Court" because they had changed their work assignments without the Judge's prior approval, and imposed a one-week suspension for the rule violations. In a letter dated October 28, 1987, Fisher informed Judge Krajewski as follows: "Due to the current hostile, intolerable and retaliatory working conditions existing in and around your courtroom, I am constrained, upon the advice of counsel, to decline your invitation to return to work there on Thursday, October 29, 1987, or at any time thereafter until further notice."

Following their October 19, 1987, suspension, Kurowski and Nicholls filed a petition in the district court seeking a contempt citation against Judge Krajewski for violation of the magistrate's *Krajewski I* reinstatement order. After hearing testimony on November 4, 1987, Magistrate Rodovich made certified findings of fact, pursuant to 28 U.S.C. § 636(e), to district judge James Moody relating to the events of October 19, 1987. The magistrate found that Nicholls and Kurowski were not late for work on

---

1. We will hereafter refer to the Kurowski and Nicholls lawsuit as *Krajewski I.*

2. The magistrate's decision was later affirmed by this court in *Kurowski v. Krajewski,* 848 F.2d 767 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988).

October 19 and that the written public defender employment rules issued that day were designed "to harass and possibly trap [Kurowski and Nicholls] and give the defendant a reason to discipline [them]." The district judge concluded that the magistrate's findings of fact were proper and found Judge Krajewski in contempt of court for "disobedience or resistance to [a] lawful order...." 28 U.S.C. § 636(e)(1).

Fisher filed his lawsuit in the United States District Court for the Northern District of Indiana, alleging that he was discharged on January 1, 1986, because he was a Democrat and Judge Krajewski was interested in appointing a Republican to the position. Shortly before trial Fisher amended his complaint, adding a claim that Judge Krajewski imposed discriminatory terms and conditions on his employment following his reinstatement on October 19, 1987. Fisher and Judge Krajewski consented to trial before Magistrate Rodovich. The case was tried before a jury, and the jury returned a verdict in favor of the defendant/appellee Krajewski.

On appeal, Fisher argues that the magistrate erred in barring any reference during trial to the findings of fact made in *Krajewski I* and during Judge Krajewski's contempt hearing relating to his October 19, 1987, conduct. He also alleges errors in the magistrate's jury instructions and further contends that two separate verdicts should have been presented to the jury, reflecting the two counts in his amended complaint, one asking whether Fisher's January 1, 1986, discharge violated his first amendment rights and the other asking whether he was constructively discharged on October 19, 1987.

Initially we point out that the plaintiff/appellant, Attorney Lloyd B. Fisher, failed to submit any part of the transcript of the lower court proceedings; failed to file a certificate stating that he did not intend to do so; failed to file a statement of the issues presented for review and further failed to notify the appellee of his intention not to file a transcript, all in violation of Fed.R.App.P. 10(b). Fed.R.App.P. 10(b) provides:

"**(b) The Transcript of Proceedings; Duty of Appellant to Order; Notice to Appellee if Partial Transcript is Ordered.**

(1) Within 10 days after filing the notice of appeal the appellant shall order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary, subject to local rules of the courts of appeals.... If no such parts of the proceedings are to be ordered, within the same period the appellant shall file a certificate to that effect.

(2) If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

(3) Unless the entire transcript is to be included, the appellant shall, within the 10 days time provided in (b)(1) of this Rule 10, file a statement of the issues the appellant intends to present on the appeal and shall serve on the appellee a copy of the order or certificate and of the statement...."

Fisher's counsel attempted to explain at oral argument that the transcript was unnecessary to decide the issues presented on review. We disagree. In the absence of the transcript or an agreed, certified statement of facts (see Fed.R.App.P. 10(d)) it is impossible to review the trial court's rulings, particularly the magistrate's bench ruling excluding findings of fact and credibility determinations made in *Krajewski I* and during Judge Krajewski's contempt hearing. Fortunately, the appellee Judge Krajewski ordered and filed a complete transcript of the lower court proceedings, realizing, as we do, that the transcript is required for meaningful review.

Judge Krajewski, after filing the transcript, maintains that we should dismiss the appeal because the appellant failed to comply with Rule 10(b). While Rule 10 does not speak of sanctions for violation of its requirements, Fed.R.App.P. 3(a) states:

"Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

It is obvious that an appellate court has no alternative but to dismiss an appeal if the absence of the transcript precludes meaningful review. Confronted with this situation, several courts of appeal have decided that the failure to file a transcript of the lower court proceedings warrants dismissal of the appeal. *Thomas v. Computax Corp.*, 631 F.2d 139, 143 (9th Cir.1980); *Southwest Admin., Inc. v. Lopez*, 781 F.2d 1378, 1380 (9th Cir.1986); *Brattrud v. Town of Exline*, 628 F.2d 1098, 1099 (8th Cir.1980); *Abood v. Block*, 752 F.2d 548, 550 (11th Cir.1985). *See also In re Plankinton Bldg. Co.*, 133 F.2d 900 (7th Cir. 1943) (dismissing an appeal because the appellant failed to fulfill the requirements of former Fed.R.Civ.P. 75, the predecessor to Fed.R.App.P. 10.) Two other circuits, while acknowledging their authority to dismiss the appeals, have decided cases on the merits to the extent it is practical and possible in the absence of a transcript. *Gulf Water Benefaction Co. v. Public Utility Comm'n*, 674 F.2d 462, 466 (5th Cir.1982); *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1113 (1st Cir.1975).

It is plain under Fed.R.App.P. 3(a) and the cases cited above that an appeal may be dismissed for failure to comply with Rule 10(b). However, in each of the cases referred to a judgment of dismissal was entered because the courts were unable to engage in meaningful review of the lower court proceedings based on the lack of a record before them. That is not the situation here, as the appellee properly took it upon himself at his own expense and filed the transcript. Thus, meaningful review is possible, and we reach the merits in this case—although, as we will discuss, we are troubled by the plaintiff-appellant Attorney

Lloyd B. Fisher's, as well as his attorneys' lack of respect in failing to comply with the rules of the court in neglecting to file a transcript they well knew or should have realized was necessary for the proper adjudication of the issues presented and in order that the justice system they took an oath to uphold and respect might operate properly.

## EVIDENCE OF THE DECISION RENDERED IN *KRAJEWSKI I* AND OF THE CONTEMPT CITATION

Initially, the appellant challenges the magistrate's ruling excluding evidence of Judge Krajewski's contempt citation for his treatment of the *Krajewski I* plaintiffs after their October 19, 1987, reinstatement. He also contends that the jury should have been informed that the magistrate had previously ruled against Judge Krajewski in *Krajewski I.* Approximately one week prior to trial, the appellee Judge Krajewski filed a motion in limine seeking exclusion of evidence of his contempt citation and of the hearings and orders pertaining thereto, and further requesting "that there be no reference to the decision in cause no. H 86–586 [*Krajewski I*]," on the grounds that the evidence was irrelevant and likely to confuse and prejudice the jurors.[3] On the day the trial commenced, the appellant filed a motion captioned "Motion Requesting This Court Take Judicial Notice of its Orders and Findings in [*Krajewski I*]," asking that the court conclude as a matter of law, based on *Krajewski I*, that Judge Krajewski was entitled to neither absolute nor qualified immunity; and that the appellant's public defender position was neither a confidential nor a policymaking position and therefore the appellant could not be discharged for political reasons. *See Branti v. Finkel*, 445 U.S. 507, 517–20, 100 S.Ct. 1287, 1294–96, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The appellant also requested that the court rule as a matter of law, based on findings of fact

---

**3.** The motion sought exclusion of Magistrate Rodovich's decision in *Krajewski I,* not this court's affirmance, the motion having been filed on February 2, 1988, four months prior to our June 2, 1988, decision in *Kurowski v. Krajewski,* 848 F.2d 767.

made in connection with the contempt proceeding, that Judge Krajewski discriminated against Fisher in the terms and conditions of his employment following his reinstatement on October 19, 1987.

Ruling from the bench, the magistrate granted the appellant's motion in part.[4] However, the magistrate denied that part of the motion asking that the court "take judicial notice" of Judge Krajewski's contempt citation and of the decision in *Krajewski I*, explaining that doing so would usurp and interfere with the jury's freedom "to assess the credibility of each and every witness and to determine whether or not there was a political firing in this case.... This entire dispute is up to the jury to decide one way or the other." The magistrate therefore granted Judge Krajewski's motion *in limine* excluding reference to the previous *Krajewski I* decisions. On appeal, Fisher urges that evidence of the contempt citation and the decision in *Krajewski I* should have been admitted because it is highly probative of the defendant/appellee's motives with respect to Fisher's January 1, 1986, discharge and the alleged constructive discharge of October 19, 1987.[5] We will reverse a district court's decision to exclude evidence only upon demonstration of an abuse of discretion, *Schultz v. Thomas*, 832 F.2d 108, 110 (7th Cir.1987).

The magistrate ruled that the jury should not be informed that he had previously ruled against Judge Krajewski in *Krajewski I* or that Judge Krajewski had been found to be in contempt of court for his treatment of the *Krajewski I* plaintiffs

on the theory that the evidence would undermine the jury's role as factfinder in Fisher's suit. He explained:

"There was the question as to my decision in the Nicholls and Kurowski case. I will grant the defendant's motion in limine in that respect.

In other words, these are two separate cases with two separate finders of facts. As in every case presented, there is the—always the possibility that the finder of fact will choose to judge the credibility differently than I did.

So I will grant the motion in limine to exclude any reference to the fact that on a previous occasion that I ruled in favor of the plaintiffs, Nicholls and Kurowski, and against the defendant, Judge Krajewski. In other words, this jury is free to assess the credibility of each and every witness and to determine whether or not there was a political firing in this case.

I also will grant the motion in limine as to the contempt citation that was presented to me; my recommendation to Judge Moody in that; Judge Moody's accepting the recommendation and imposing sanctions. I do not believe that that is a matter that can come in by way of impeachment or any other matter.

\* \* \* \* \* \*

So, you know, our legal system is not perfect and I have seen numerous cases, for example, where two criminal defendants are tried separately and one winds up being found guilty and the other winds up being found not guilty and both

---

**4.** Specifically, the magistrate ruled as a matter of law that the appellant did not hold a policy-making position and therefore could not be discharged for political reasons, stating:

"Although there has not been a motion for summary judgment filed in this case, I will apply the same law in this case as I have applied in the Nicholls and Kurowski case. In other words, I already have ruled as a matter of law that I will incorporate the orders in the previous case that the position of public defender is not a quote, policy making position, or a confidential position or a position whose political affiliation is needed for the effective performance of the job as those words are used in the various cases.

So the only issue in this case is the motivation of Judge Krajewski at the time that this was—this decision was made."

Though the magistrate's ruling on the appellant's motion does not refer to Judge Krajewski's entitlement to absolute or qualified immunity, he had previously denied Judge Krajewski's motion to dismiss Fisher's lawsuit on those grounds.

**5.** As noted *supra* p. 1060, it is impossible to review the magistrate's ruling in the absence of the transcript, as we would be left to speculate as to the magistrate's reasoning in excluding evidence of the findings in the previous *Krajewski I* proceedings.

convictions certainly have to be affirmed or both jury verdicts certainly have to be affirmed and this is the same case.

If this jury chooses to find in favor of the plaintiffs, that's their prerogative. If they choose to find in favor of the defendant, that is the jury's prerogative. But any prior rulings that I have made, any prior findings of facts that I have made are not res judicata in these proceedings. This entire dispute is up to the jury to decide one way or the other."

The plaintiffs in *Krajewski I* alleged that Judge Krajewski discharged them effective January 1, 1986, because of their political affiliation. Acting as trier of fact, the magistrate "had to choose between competing stories" regarding Judge Krajewski's motive in discharging the plaintiffs and "[had] to decide who to believe." *Kurowski v. Krajewski*, 848 F.2d at 771. Thus, in reaching his decision in *Krajewski I* the magistrate made a number of credibility determinations and rejected Judge Krajewski's testimony positing a lawful basis for the plaintiffs' discharge. *See id.* In this lawsuit Lloyd Fisher (like the plaintiffs in *Krajewski I*) alleged that Judge Krajewski discharged him effective January 1, 1986, for political reasons. The jury in this case (like the magistrate in *Krajewski I*) was called upon to determine the credibility of Judge Krajewski's testimony concerning whether or not the discharge was politically motivated.

Similarly, the contempt citation turned on the credibility of witnesses relating the events of October 19, 1987. We do not have the transcript of the contempt hearing, but Judge Krajewski stated during his deposition in this lawsuit that the magistrate found at the conclusion of the contempt hearing that Kurowski and Nicholls were not late for work on October 19, 1987, that there were no written public defender rules prior to that date and further, the rules were designed to harass the public defenders. The jury in this case also heard testimony concerning the events of October 19, 1987, and had to determine whether the public defender rules were promulgated and applied to the appellant Fisher in a discriminatory fashion, in order to decide

Fisher's claim of constructive discharge. It is plain that the roles of the factfinders in *Krajewski I*, the contempt proceeding and this case overlapped to a significant extent.

■ We were confronted with a similar situation in *Schultz v. Thomas*, 832 F.2d 108 (7th Cir.1987). In that case, the plaintiff filed a civil rights action against two Racine, Wisconsin, police officers alleging false arrest and excessive use of force in connection with plaintiff's arrest for disorderly conduct. The plaintiff had previously been acquitted of the disorderly conduct charge after a trial to the court, and the trial judge found that the police officers' testimony was not credible. The circuit court trial judge was allowed to testify in a subsequent civil rights action to the findings of fact and conclusions of law contained in his opinion on the state charge, and a transcript of the judge's opinion was also admitted in evidence. We disagreed with the judge's ruling in the civil rights case in allowing the original trial judge to testify and remanded that case for a new trial, holding that "[the judge's] testimony was irrelevant and tended to usurp the jury's function in assessing the credibility of testifying witnesses." 832 F.2d at 111. We explained our holding as follows:

"Obviously, the occurrence upon which Judge Flynn decided the disorderly conduct charge was the same as that placed before the civil rights jury. In determining whether the defendants violated Schultz's civil rights by falsely arresting him and then giving willfully false testimony in order to secure his conviction, the jury was required to observe and listen to many of the same witnesses giving the identical testimony as that which formed the basis for Judge Flynn's disorderly conduct decision. Indeed, the aforequoted excerpts from Judge Flynn's opinion so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them. *See Wilmington v. J.I.*

*Case Co.*, 793 F.2d 909, 919 (8th Cir.1986) (upholding a district court's refusal to admit the text of an arbitration decision because it would 'either usurp the jury's role in assessing credibility or would be unfairly prejudicial')."

832 F.2d at 110–11. As in *Schultz*, evidence underlying Judge Krajewski's contempt citation and the magistrate's decision in *Krajewski I* was the same as the evidence placed before the jury in Fisher's lawsuit. Because we are confident that admission of this evidence would usurp the jury's freedom "to assess the credibility of each and every witness and to determine whether or not there was a political firing in this case," and would unfairly prejudice Judge Krajewski in denying him the right to have a fair and impartial jury decide the facts, we hold that the magistrate did not abuse his discretion in excluding the evidence.[6]

### COURT'S INSTRUCTIONS 15, 16 AND 17

Fisher claims that the magistrate erred in giving the court's instructions 15, 16 and 17. The court's instruction 15 states:

"You are instructed that evidence that political considerations were, in general terms, important to the defendant and that the defendant was displeased with the plaintiff because of his political affiliation is not sufficient evidence to meet the plaintiff's burden of proof. Evidence that others were hired for purely political reasons also is not sufficient by itself to meet the plaintiff's burden. The plaintiff must establish that his political affiliation was a motivating or substantial factor in the decision to terminate his employment."

The court's instruction 16 states:

"You are also instructed that to the extent that the defendant as an employer

lacked confidence in the public defenders that he had inherited from the prior administration for some reason other than their political affiliation, he was free to discharge them."

The court's instruction 17 states:

"You are instructed that the plaintiff was an employee at will, which means that the plaintiff had no legitimate claim of entitlement to continued employment as a public defender and could be terminated for any reason or no reason, but he could not be terminated for exercising a constitutionally protected right."

We review a challenge to a jury instruction "both in the context of the other instructions given and in light of the allegations of the complaint, opening and closing arguments and the evidence of record." *General Leaseways v. National Truck Leasing Ass'n*, 830 F.2d 716, 725 (7th Cir. 1987). This inquiry must be undertaken " 'in a common sense manner, avoiding fastidiousness, [and] inquiring whether the correct message was conveyed to the jury reasonably well.' " *General Leaseways*, 830 F.2d at 725 (quoting *Wilk v. American Medical Ass'n*, 719 F.2d 207, 218 (7th Cir. 1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984)).

The appellant does not take issue with the last sentence of instruction 15: "The plaintiff must establish that his political affiliation was a motivating or substantial factor in the decision to terminate his employment." Nor does he challenge the court's instruction 13, which makes the same point. Instruction 13 reads:

"Initially the burden is on the plaintiff to show that his conduct was constitutionally protected and that his conduct was a substantial or motivating factor in the defendant's actions toward him. If

---

**6.** We find no merit to the appellant's claim that the magistrate's ruling limited Fisher's ability to impeach Judge Krajewski based on his testimony or admissions during *Krajewski I* or the contempt proceedings. The appellant has failed to cite, and we have been unable to find, any portion of the transcript or record supporting his contention that the magistrate precluded use of admissions or inconsistent statements made during the previous proceedings. Moreover, the issue is moot as the appellant has also failed to identify any adverse admissions or inconsistent statements made in the prior proceedings. Therefore, this argument also fails to convince us that the magistrate abused his discretion in excluding evidence of the contempt citation and the decision in *Krajewski I.*

you find that the plaintiff has met this burden, then the defendant has the burden to establish by a preponderance of the evidence that he would have reached the same decision as to the plaintiff's employment even in the absence of the protected conduct."

Both the last sentence in instruction 15 and all of instruction 13 are derived from *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). This court has held that the *Mt. Healthy* analysis applies where there is a dispute, as in this case, regarding an employer's motivation in discharging an employee. *Wren v. Jones,* 635 F.2d 1277, 1286 (7th Cir.1980), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 110 (1981); *Nekolny v. Painter,* 653 F.2d 1164, 1167 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

 The appellant argues that the first two sentences in instruction 15 added to his initial burden of demonstrating that politics was a motivating factor in his discharge, in suggesting that he also had to prove that political considerations were important to Judge Krajewski or that Judge Krajewski was displeased with Fisher's political affiliation. We disagree. Instruction 15 did not modify Fisher's burden of proving that politics was a substantial or motivating factor in his discharge, rather it explained to the jury that Fisher could not satisfy his burden merely by demonstrating that Judge Krajewski was "displeased" that Fisher is a Democrat or that Fisher's political affiliation was "important" to Judge Krajewski. That explanation of the meaning of the phrase "substantial and motivating factor" reflects our observation in *McClure v. Cywinski,* 686 F.2d 541, 545 (7th Cir.1982), that a plaintiff cannot establish that politics is a motivating or substantial factor in his discharge simply by alleging that politics is important to the employer or that the employer is not wholly satisfied with the employee. *See also Nekolny v. Painter,* 653 F.2d at 1168. Therefore, instruction 15 was proper.

 The appellant also alleges that instruction 16 incorrectly advised the jury

that a public defender may be discharged simply because his employer "lacks confidence" in him. However, instruction 16 was lifted virtually verbatim from the Supreme Court's majority opinion in *Branti v. Finkel,* 445 U.S. 507, 520 n. 14, 100 S.Ct. 1287, 1295 n. 14, 63 L.Ed.2d 574 (1980), a case involving the discharge of a competent assistant public defender because of his political beliefs, and is a proper statement of the law. Moreover, Judge Krajewski's testimony supports a finding that he "lacked confidence" in Fisher for reasons other than his political affiliation. Judge Krajewski testified that he terminated Fisher's employment, not because of his political affiliation, but to restore public respect for the Lake County court following the criminal convictions of former Judge Orval Anderson and the former chief public defender Lee Christakis (*see infra* p. 1066). The same defense was presented in *Krajewski I,* and we explained there that "If Judge Krajewski in fact thought Kurowski and Nicholls [the two assistant public defenders discharged along with Fisher] a blot on the court's escutcheon, he could fire them, whether they were or not." 848 F.2d at 771. We also observed: "Since a public official may fire subordinates for a good, bad, or indifferent reason—any but an unconstitutional reason—the actual moral standards of Kurowski and Nicholls are irrelevant. *It was enough that he had lost confidence in them.*" *Id.* (emphasis added) (citation omitted). We agree that instruction 16 accurately reflects the law as recited in *Branti v. Finkel* and *Krajewski I.*

 The transcript of the jury instruction conference before the magistrate reveals that the appellant raised no objection to the court's instruction 17. The law is clear in this circuit that an objection to a district court's proposed jury instruction is waived on appeal unless the appellant objected on the record in the district court and clearly stated the reasons for the objection. *See, e.g., United States v. Marrinson,* 832 F.2d 1465, 1473 (7th Cir.1987). Having failed to object to instruction 17 in

the district court, the appellant has waived the right to object on appeal.

## FISHER'S INSTRUCTIONS B, C, C–1 AND D

The appellant also contends that the magistrate erred in failing to give the appellant's requested jury instructions B, C, C–1 and D. He argues that without these instructions the jury could not properly evaluate Judge Krajewski's defense that he discharged the appellant, not for political reasons, but because Fisher was tainted with the criminal convictions of former Lake County Judge Orval Anderson and former Lake County Chief Prosecutor Lee Christakis. Fisher's requested instruction B states:

> "The Defendant Judge Krajewski terminated the Plaintiff Lloyd B. Fisher because of his association with former Judge Orval Anderson.
>
> If you find that this association between Mr. Fisher and former Judge Orval Anderson is protected by the 1st Amendment to the United States Constitution; and if you further find that this conduct was a substantial or motivating factor in Judge Krajewski's decision to terminate his employment, then
>
> The Defendant James Krajewski must show by a preponderance of the evidence that he would have reached the same decision as to ther [sic] termination of Mr. Fisher even in [the] absence of the protected conduct."

■ The appellant maintains that he has a constitutional right of free association in the work place. Specifically, he claims a right of free association with former Judge Anderson and contends that instruction B properly advises the jury of that right. We have several problems with the appellant's argument. Initially, the first sentence of instruction B advises the jury that Judge Krajewski discharged the appellant "because of his association with former Judge Orval Anderson." That charge is an improper attempt to direct the jury to resolve the central issue in the case (the reason for the appellant's discharge) in a particular manner. Moreover, a fair reading of the

appellant's complaint and amended complaint reveals that he failed to allege that he was discharged because of his "association" with former Judge Anderson. Instead, Fisher claimed his employment was terminated because of his political affiliation. Fisher's instruction B alters his theory of the case and would have confused the jurors. Second, contrary to the appellant's contention, Judge Krajewski did not argue that he discharged the appellant because of his "association" with former Judge Anderson. Rather, Judge Krajewski testified that he discharged the appellant in response to public pressure to "clean up" the Lake County Court and to improve the public's perception of the court. He testified that there was a public perception "that the public defenders in conjunction with the judge had these scams like going on," in light of "what had happened previously with the judge [Anderson] and ... the chief public defender having been indicted and convicted for criminal acts done while members of the court." He also said that Lloyd Fisher was part of the "old guard" that the public distrusted. Lastly, as we stated in *Krajewski I*, Judge Krajewski was at liberty to discharge the appellant if he believed the appellant's association with former Judge Anderson to be "a blot on the court's escutcheon." 848 F.2d at 771. For these reasons, we hold that the district court properly rejected the appellant's proposed instruction B.

Fisher's instruction C states:

> "You have heard evidence that:
>
> Plaintiff's association with the former Judge Orval Anderson was the reason for Plaintiff's discharge because of Defendant's desire to clean the Court following the resignation and conviction of Judge Orval Anderson, for activities which did not involve Plaintiff.
>
> The Plaintiff's freedom of association with Judge Orval Anderson in the work place is also an association protected by the First Amendment.
>
> If you find that Plaintiff's freedom to associate in the work place was infringed upon by his discharge, then you must determine whether the Government offi-

cial's interest in furthering a legitimate goal in discharging Plaintiff was outweighed by Plaintiff's interest in exercising his freedom of association in the work place.

If you find that Defendant did not have a legimate [sic] governmental interest in discharging Plaintiff or if you find that the Plaintiff's interest in exercising his freedom of association in the work place [sic], then you must find for the Plaintiff and against the Defendant."

Fisher's instruction C–1 is identical to instruction C above, except that language is added to the final paragraph. We set forth below the final paragraph of Fisher's instruction C–1, highlighting the added language:

"If you find that Defendant did not have a legimate [sic] governmental interest in discharging Plaintiff, or if you find that the Plaintiff's interest in exercising his freedom of association in the work place *outweighed Defendant's stated legitimate interest*, then you must find for the Plaintiff and against the Defendant. *If, however, you find that Defendant did have a legitimate governmental interest that outweighed Plaintiff's interest in exercising his freedom of association in the workplace, then you must determine whether or not Defendant had other means available to him to accomplish that objective that would have caused a lesser infringement on Plaintiff's First Amendment rights.*"

■ Instructions C and C–1 advise the jury to consider whether Judge Krajewski discharged the appellant because he exercised his "freedom to associate in the work place." However, as noted above, the appellant filed this suit claiming his employment was terminated because he exercised his constitutional right to be a Democrat, not because he "associated" with former Judge Anderson. The appellant's proffered instructions C and C–1, like his requested instruction B, contradict his theory of the case as presented in his pleadings and would have occasioned considerable juror confusion. Furthermore, instructions C and C–1 conflict with the court's instruc-

tion 13, to which the appellant did not object, reciting the parties' respective burdens of proof under *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle.* As previously noted, the *Mt. Healthy* analysis applies in this case, as there is a dispute regarding Judge Krajewski's motivation in discharging the appellant (*see supra* p. 1065). *Mt. Healthy* does not require the factfinder to determine whether the employer's interests outweigh the interests of the employee, as the appellant's preferred instructions C and C–1 advise. *See Wren v. Jones,* 635 F.2d 1277, 1286 (7th Cir.1980), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 110 (1981). Therefore, instructions C and C–1 were properly rejected because they fail to state the law correctly, they contradict other approved jury instructions and would have confused the jury. Unfortunately, we cannot say that we are surprised by the inconsistencies and contradictions contained in the appellant's requested instructions, as the appellant's trial attorneys also filed this appeal—without a transcript of the district court proceedings.

The appellant's requested instruction D states:

"If you find that Defendant has borne his burden of producing evidence of legitimate, non-political reasons for terminating Plaintiff, then you must determine whether Plaintiff has established that it is more likely than not that Defendant's stated reasons are pretextual, that is, not the real reasons for Plaintiff's termination.

If you determine that Defendant's stated non-political reasons for Plaintiff's discharge were pretextual, then you must find for the Plaintiff and against Defendant."

■ The instruction, as submitted in the district court, cites as its source *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which established the allocation of burdens and order of proof in discrimination actions filed under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*). The instruction was inappropriate

in this case, as Fisher did not allege a violation of Title VII.

## SPECIAL VERDICT

The appellant also contends that the jury should have been given separate verdict forms relating, respectively, to his January 1, 1986, discharge and his alleged October 19, 1987, constructive discharge. The language of the verdict actually presented to the jury was contained in the court's jury instruction 24, stating:

> "The forms of verdict read as follows:
> 'We, the jury, find in favor of the defendant, James J. Krajewski, and against the plaintiff, Lloyd B. Fisher.'
> 'We, the jury, find in favor of the plaintiff, Lloyd B. Fisher, and against the defendant, James J. Krajewski, and assess actual damages in the amount of _____ Dollars and punitive damages in the amount of _____ Dollars.'"

Counsel for both parties were provided with copies of the court's proposed instructions 1–25 and were given the opportunity to object to them during a jury instruction conference. The appellant failed to object to the court's instruction number 24. However, the appellant's counsel queried the magistrate: "The jury verdicts, it will be two separate verdicts?" to which the magistrate responded affirmatively.

■ Judge Krajewski contends on appeal that the appellant waived the right to object to the verdict form on appeal because he failed to object in the trial court. We agree. The appellant failed to object to instruction 24, and it contains "two separate verdicts," as his query sought to confirm. Thus, his question to the magistrate does not even suggest he was in disagreement with the verdict form contained in the instruction. Nor did the appellant ever clearly explain to the magistrate that he wanted separate verdict forms relating to his January 1, 1986, discharge and his alleged constructive discharge of October 19, 1987, and he failed to submit any such proposed verdict form.

As noted above, the appellant failed to file a transcript of the proceedings before the magistrate, and also failed to comply with the other requirements of Fed.R.App. P. 10(b) (*see supra* p. 1060). Contrary to the appellant's contention at oral argument, we could not have decided the issues presented in this appeal without the court transcript. The transcript of the jury instruction conference was certainly necessary in determining whether there had been a waiver of objection to the court's instruction 17 and to the form of verdict. In addition, the appellant, in his brief and oral argument, challenged the magistrate's bench ruling excluding findings of fact and credibility determinations made in *Krajewski I* and during Judge Krajewski's contempt hearing. It is impossible to properly review a ruling made during the course of trial without a transcript of the proceeding, particularly where, as here, the parties disagree as to the scope and the specific grounds for the ruling. In the absence of the transcript, we are left to speculate as to the reasoning the trial court employed in excluding the evidence at issue. This court will not render a judicial decision founded on speculation.

It goes without saying that we expect and are entitled to strict compliance with the appellate rules of procedure. The appellant's failure to comply with Rule 10(b) is particularly disturbing, as he is an attorney duly licensed to practice in Indiana, as well as admitted to practice before this court. In addition, he is represented by counsel on appeal, and their default and conduct would have prevented this court from engaging in meaningful review of all of the challenges to the lower court's rulings. Moreover, this is not a case where the appellant even attempted to conform to the rules but was unsuccessful with respect to timeliness or form. The record reveals no evidence that Fisher attempted to adhere to Rule 10(b), as he failed to file the transcript or perform any of the alternative acts set forth in the rule.

If, as the appellant's counsel contended during oral argument, the plaintiff/appellant could not afford the cost of transcribing all of the lower court proceedings, he had three alternatives: he could have ordered the transcription of only the relevant

portions of the record, as Fed.R.App.P. 10(b) permits, or filed an agreed, certified statement of facts pursuant to Fed.R.App.P. 10(d), or he could have sought authorization from the district court to appeal *in forma pauperis* under 28 U.S.C. § 1915(a) (*see Thomas v. Computax Corp.*, 631 F.2d at 143; *see also* Fed.R.App.P. 24).

■ Because it is the appellant's responsibility to file the transcript of the lower court proceeding, and the appellant failed to satisfy that obligation in this case, it is hereby ordered, pursuant to Fed.R.App.P. 39(e), that the costs of appeal shall include the cost incurred in the preparation of the transcript.

■ Furthermore, we believe that it is appropriate, pursuant to Fed.R.App.P. 3(a),[7] to impose sanctions in the total amount of $1,500.00 to be borne in equal measure by the plaintiff/appellant Attorney Lloyd B. Fisher and each of his attorneys of record on appeal, Gilbert King, Jr. and MacArthur Drake, for their failure to submit any part of the transcript of the lower court proceedings; failure to file a certification showing that they did not intend to do so; failure to file a statement of the issues presented for review; and failure to notify the appellee of their intention not to file the transcript, all in violation of Fed.R.App.P. 10(b). In addition, we refer this case to the Indiana Disciplinary Board for investigation, review and any action they deem appropriate under the circumstances.

The judgment on the jury's verdict and the magistrate's denial of the appellants' motion for a new trial are hereby AFFIRMED.

---

7. Fed.R.App.P. 3(a) provides: "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

